**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re | ) |
| | ) Case No: 22-10445-M |
| Hannah Delaney Williams, | ) |
| Debtor(s). | ) Chapter: 7 |
| | ) |
| | ) Judge: Hon. Terrence L. Michael |

**MOTION FOR RELIEF FROM AUTOMATIC STAY,**
**REQUEST FOR ABANDONMENT OF THE COLLATERAL**
**AND NOTICE OF OPPORTUNITY FOR HEARING**

COMES NOW Mid America Mortgage, Inc., its subsidiaries, affiliates, predecessors in interest, successors and/or assigns ("Movant"), through the undersigned counsel, pursuant to Federal Rules of Bankruptcy Procedure 4001 and 9014, and states as follows in support of its Motion herein:

1.     On May 18, 2022, the Debtor, above-named, filed a voluntary petition in Bankruptcy under Title 11, Chapter 7, U.S.C., in the United States Bankruptcy Court, for the Northern District of Oklahoma.

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334 and applicable local rules. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2). Venue is proper in this District under 28 U.S.C. Section 1409(a).

3.     The Debtor, Hannah D Williams, ("Obligor(s)") is indebted to Movant pursuant to a Promissory Note (the "Debt Obligation"). A copy of the Debt Obligation is attached hereto and incorporated herein as Exhibit A. Movant is entitled to enforce the Debt Obligation.

4.     As security for repayment of the Debt Obligation the Obligor(s) have pledged certain collateral described as 9006 E 39Th St, Tulsa, Oklahoma 74145, and described as

4216-N-0634

LOT TWENTY-TWO (22), BLOCK TWNETY-TWO (22) OF BLOCKS 18 THROUGH 23, INCLUSIVE, BRIARWOOD, AN ADDITION IN TULSA COUNTY, STATEOF OKLAHOMA, ACCORDING TO THE RECORDED PLAT NO. 2469.

("Collateral"). A copy of the proof of perfection of Movant's interest is in the Collateral ("Security Interest") is attached hereto and incorporated herein as Exhibit B.

5.      All rights and remedies under the Debt Obligation and Security Interest have been assigned to the Movant.  To the extent such assignment is not otherwise included in the Debt Obligation or Security Interest, the assignment(s) are attached hereto and incorporated herein as Exhibit C ("Assignment(s)").

6.      Mid America Mortgage, Inc. ("Movant") services the Debt Obligation secured by the Collateral referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Obligors obtain a discharge, and action is commenced under applicable state law against the Collateral, such action will be conducted in the name of Movant or Movant's successor or assignee. Movant, directly or through an agent, has possession of the Debt Obligation. The Debt Obligation is either payable to Movant or has been duly endorsed and/or assigned in blank or specifically to Movant.

7.      As of May 31, 2022, the outstanding indebtedness owed to Movant less any partial payments or suspense balance is $77,504.33 broken down as follows:

| | |
|---|---|
| Unpaid Principal Balance | $71,178.34 |
| Unpaid, Accrued Interest | $1,998.82 |
| Uncollected Late Charges | $309.75 |
| Taxes and Insurance Payments on behalf of Debtor(s) | $891.90 |
| Other Costs | $3,558.27 |
| **Less**: Suspense Balance | ($432.75) |
| Minimum Outstanding Obligations | $77,504.33 |

8.     As of May 31, 2022, the value of the Collateral is $130,000.00. The basis for this value is Debtor's Schedules A/B.

9.     The following chart sets forth the number and amount of contractual payments due pursuant to the terms of the Debt Obligation that have been missed by the Debtor as of May 31, 2022:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 5 | 10/01/2021 | 02/01/2022 | $710.47 | $3,552.35 |
| 3 | 03/01/2022 | 05/01/2022 | $660.00 | $1,980.00 |
| Less partial payments (suspense balance): | | | | ($432.75) |
| | | | Total: | $8,967.62 |

10.     A copy of Movant's pay history is attached hereto as Exhibit D.

11.     The address to which payments are to be made to Servicer as agent for Movant is:

> Mid America Mortgage, Inc.
> PO Box 2229
> Addison, Texas 75001-2229

11.     The Collateral is burdensome to the Estate and is of inconsequential value and benefit to the Estate. As such, Movant is entitled to an Order directing the Trustee to abandon the Collateral pursuant to 11 U.S.C. §554(b).

12.     Cause exists for relief from the automatic stay under 11 U.S.C. §362(d) for the following reasons:

a.     11 U.S.C. §362(d)(1) - For cause in that payments required to be made by Obligors to Movant are not being made as required by the Debt Obligation.

WHEREFORE, Movant prays that this Court issue an Order:

1.     Terminating or modifying the stay imposed by 11 U.S.C. 362(a) allowing Movant (and any successors or assigns) to proceed under

4216-N-0634

applicable non-bankruptcy law to enforce its remedies in and to the Collateral.

2.  For an Order of Abandonment pursuant to 11 U.S.C. §554(b).

3.  For such other relief as the Court deems proper.

## NOTICE OF OPPORTUNITY FOR HEARING

**Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Room 105, Tulsa, Oklahoma, 74103-3015, no later than 14 days from the date of the filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned Movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice.**

**The 14 day period includes the three (3) days allowed for mailing provided for in Bankruptcy Rule 9006(f).**

Dated: June 2, 2022

BONIAL & ASSOCIATES, P.C.

/s/ Wesley T. Kozeny
Wesley T. Kozeny / # 31325
609 S. Kelly Avenue, Suite A-2
Edmond, Oklahoma 73003
Phone: (405) 285-8100
Fax: (405) 285-8951
OKBK@BonialPC.com
Attorney for Mid America Mortgage, Inc.

4216-N-0634

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Motion for Relief including all exhibits and attachments, and this pleading was filed electronically on <u>June 2, 2022</u>, with the United States Bankruptcy Court, and has been served on the parties in interest via e-mail by the Court's CM/ECF System as listed on the Court's Electronic Mail Notice List as follows:

**Debtor's Attorney**
Ron D. Brown
Brown Law Firm PC
715 S. Elgin Ave.
Tulsa, OK  74120

**Chapter 7 Trustee**
Patrick J. Malloy, III
Malloy Law Firm, P.C.
401 S Boston Ave. Suite 500
Tulsa, Oklahoma 74103-3800

**US Trustee**
Office of the U.S.Trustee
PO Box 3044
Tulsa, Oklahoma  74101

I hereby certify that a true and correct copy of the Motion for Relief including all exhibits and attachments, and this pleading was filed electronically on <u>June 2, 2022</u>, with the United States Bankruptcy Court, and has been served by Regular United States Mail Service, first class, postage fully pre-paid, to the parties listed below on <u>June 2, 2022</u>.

**All parties included on the attached copy of the matrix herein**, and

**Debtor(s)**
Hannah Delaney Williams
9006 East 39th Street
Tulsa, OK 74145

Respectfully Submitted,

<u>/s/ Wesley T. Kozeny</u>
Wesley T. Kozeny

4216-N-0634

Label Matrix for local noticing
1085-4
Case 22-10445-M
Northern District of Oklahoma
Tulsa
Wed Jun  1 15:41:48 CDT 2022

AmeriCredit/GM Financial
Attn: Bankruptcy
Po Box 183853
Arlington, TX 76096-3853

Ron D. Brown
Brown Law Firm PC
715 S. Elgin Ave.
Tulsa, OK 74120-4233

Capital One
Po Box 31293
Salt Lake City, UT 84131-0293

(p)CAVALRY PORTFOLIO SERVICES LLC
500 SUMMIT LAKE DR
STE 400
VALHALLA NY 10595-2321

Cavalry SPV I, LLC
PO Box 520
Valhalla, NY 10595-0520

Chief, Civil Trial Section - Central Region
Tax Division, U.S. Department of Justice
P.O. Box 7238
Washington, DC 20044-7238

Citi Bank
6621 North Meridian
Oklahoma City, OK 73116-1423

Comenity Bank
PO Box 659705
San Antonio, TX 78265-9705

First Tribal Lending
PO Box 2229
Addison, TX 75001-2229

Hall & Ludlam, PLLC
210 Park Ave.
Suite 3001
Oklahoma City, OK 73102-5649

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Love Beal and Nixon
PO Box 32738
Oklahoma City, OK 73123-0938

Patrick J. Malloy III
Malloy Law Firm, P.C.
401 S Boston Ave. Suite #500
Tulsa, OK 74103-4023

Meadors-Fouda, Amber
5200 South
Yale Avenue
STE 505
Tulsa, OK 74135-7490

Mid America Mortgage, Inc.
15301 Spectrum Dr. Ste 405
Addison, TX 75001-6877

Midland Funding, LLC
Attn: Bankruptcy
Po Box 939069
San Diego, CA 92193-9069

Nordstrom FSB
Attn: Bankruptcy
Po Box 6555
Englewood, CO 80155-6555

Office of the United States Trustee
PO Box 3044
Tulsa, OK 74101-3044

Okla Empl. Sec. Comm.
P.O. Box 53039
Oklahoma City, OK 73152-3039

Oklahoma Empl. Sec. Comm.
PO Box 53039
Oklahoma City, OK 73152-3039

Oklahoma Tax Commission
General Counsel's Office
100 N Broadway Ave, Suite 1500
Oklahoma City, OK 73102-8601

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Tinker Federal Credit Union
715 Metropolitan Ave
Oklahoma City, OK 73108-2054

Tinker Federal Credit Union
Attn: Bankruptcy
Po Box 45750
Tinker AFB, OK 73145-0750

Tortorici, Paul A.
421 Northwest
13 St
STE 300
Oklahoma City, OK 73103

Tulsa County Treasurer
John M. Fothergill
218 W 6th St., 8th Fl
Tulsa, OK 74119-1004

(p)NORTHERN DISTRICT OF OKLAHOMA UNITED STATE
ATTN MS MICHELLE SCHRADER
110 W 7TH STREET
SUITE 300
TULSA OK 74119-1013

US Dept of Education/GLELSI
Attn: Bankruptcy
Po Box 7860
Madison, WI 53707-7860

US SEC & EXCHANGE COMM.
Midwest Regional Office
175 W. Jackson Boulevard, Ste 900
Chicago, IL 60604-2815

Hannah Delaney Williams
9006 East 39th Street
Tulsa, OK 74145-3412


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Cavalry Portfolio Services, LLC          Portfolio Recovery Associates, LLC          U.S. Attorney
PO Box 27288                             Attn: Bankruptcy                            110 West Seventh Street
Tempe, AZ 85282                          120 Corporate Boulevard                     Suite 300
                                        Norfolk, VA 23502                           Tulsa, OK 74119


End of Label Matrix
Mailable recipients     30
Bypassed recipients      0
Total                   30

**EXHIBIT A**

Loan Number ███████████

MIN: ███████████

**Multistate**

# NOTE

FHA Case Number: ███████████

January 28, 2015
[Date]

Tulsa, OKLAHOMA
[City, State]

9006 E. 39th St.
Tulsa, OKLAHOMA 74145
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $82,323.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Today Lending, LLC, an Oklahoma corporation**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.750%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **March 1, 2015**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on **February 1, 2045**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**Today Lending, LLC**
**1629 S Peoria Avenue**
**Tulsa, OKLAHOMA   74120**

or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $381.25.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE FHA Fixed Rate Note

1/2015-a

IDS, Inc.

Loan Number ▉▉▉▉▉▉                                                                                           MIN ▉▉▉▉▉

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED
### (A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
### (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
### (C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
### (D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
### (E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
### Grounds for Acceleration of Debt
(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

---

MULTISTATE FHA Fixed Rate Note                                                                                                    1/2015-a

IDS, Inc.

Loan Number:  ████████                                                                    MIN: ████████

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Hannah D Williams                     -Borrower                                          -Borrower

                                                                                    *[Sign Original Only]*

Loan originator (organization): **Today Lending, LLC**; NMLS # ████████
Loan originator (organization): **Today Lending, LLC**; NMLS ████████
Loan originator (individual): **Chris Davenport**; NMLS # ████████

MULTISTATE FHA Fixed Rate Note                                                            1/2015-a

IDS, Inc.

Lender:          Today Lending, LLC, an Oklahoma Corporation

Borrower:        Hannah D Williams

Property:        9006 E. 39th St. Tulsa, Oklahoma  74145

Note Amount:     $82,323.00

Loan Number:     200273037

# ENDORSEMENT ALLONGE TO NOTE

This Allonge to Note is to the certain Note dated January 28, 2015, executed by Hannah D Williams in the amount of $82,323.00 in favor of Today Lending, LLC, an Oklahoma Corporation as Payee. This Allonge is affixed and becomes a permanent part of said Note.

**PAY TO THE ORDER OF**

**Mid America Mortgage, Inc**

**Without Recourse**

**Today Lending, LLC, an Oklahoma Corporation**

Signature:

**Suzanne Hubbard, Operations Manager, Southwest Bank, Attorney In Fact For Today Lending, LLC, an Oklahoma Corporation**

Tulsa County Clerk - PAT KEY
Doc # 2015007437 Pages 22 Recorded 01/29/2015 Document 8    **** Electronically Filed Document ****    Filed in USBC ND/OK on 06/02/22 Page 12 of 23
Receipt #        Fee $29.00

Tulsa County Treasurer - DENNIS SEMLER
Mortgage Tax $82.00 Deputy: SBARTLESON
Receipt #        01/29/2015 at 11:07 AM

# EXHIBIT B

This instrument was prepared by:
**Today Lending, LLC**
**1629 S Peoria Avenue**
**Tulsa, OKLAHOMA 74120**
**918-388-9717**

WHEN RECORDED, MAIL TO:
**Today Lending, LLC**
**1629 S Peoria Avenue**
**Tulsa, OKLAHOMA 74120**

AMERICAN ABSTRACT &
TITLE COMPANY
12133 S. Yukon Ave. Suite 300
Glenpool, Oklahoma 74033

Case Number:

_____ [Space Above This Line For Recording Data] _____

**State of Oklahoma**

# MORTGAGE

FHA Case Number:

MIN
SIS Telephone #: **(888) 679-MERS**

THIS MORTGAGE ("Security Instrument") is given on **January 28, 2015**.

The Mortgagor is **Hannah D Williams, a single woman**, ("Borrower").

This Security Instrument is given to **Mortgage Electronic Registration Systems, Inc. ("MERS")**, (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS**.

**Today Lending, LLC, an Oklahoma corporation**, ("Lender")
is organized and existing under the laws of **Oklahoma**,
and has an address of **1629 S Peoria Avenue, Tulsa, OKLAHOMA 74120**.

Borrower owes Lender the principal sum of **EIGHTY-TWO THOUSAND THREE HUNDRED TWENTY-THREE AND NO/100** Dollars (U.S. **$82,323.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **February 1, 2045**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in **Tulsa** County, Oklahoma:

**See attached Exhibit A.**

Parcel ID Number: 05050-93-24-05690

which has the address of **9006 E. 39th St.**
**Tulsa, OKLAHOMA 74145**, ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

---

**FHA Oklahoma Mortgage with MERS – 4/96**    **Amended 2/01**

IDS, Inc.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender,

instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

---

**FHA Oklahoma Mortgage with MERS – 4/96**                                                                                                                    **Amended 2/01**

Page 3 of 7

IDS, Inc.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

    **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    **12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

---

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and other remedies permitted by applicable law. Lender shall be entitled to collect all costs and expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

---

**FHA Oklahoma Mortgage with MERS – 4/96**                                                                 **Amended 2/01**

Page 5 of 7

IDS, Inc.

If Lender invokes the power of sale, Lender shall give notice in the manner required by applicable law to Borrower and any other persons prescribed by applicable law. Lender shall also publish the notice of sale, and the Property shall be sold, as prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the manner prescribed by applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs unless applicable law provides otherwise.

**20. Waiver of Appraisement.** Appraisement of the Property is waived or not waived at Lender's option, which shall be exercised before or at the time judgment is entered in any foreclosure.

**21. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. **Maximum allowed by the Secretary of HUD**.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider ☐ Graduated Payment Rider ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider ☐ Growing Equity Rider ☒ Other: **Section 184 Fee Simple,**

### NOTICE TO BORROWER

A power of sale has been granted in this Security Instrument. A power of sale may allow the Lender to take the Property and sell it without going to court in a foreclosure action upon default by Borrower under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____ -Witness    _____ -Witness

_____ (Seal)    _____ (Seal)
Hannah D Williams           -Borrower                                -Borrower

STATE OF OKLAHOMA, __Creek_____ County ss:

The foregoing instrument was acknowledged before me this __28__ day of __January__, __2015__ by Hannah D Williams, a single woman.

Witness my hand and official seal.
My Commission Expires: __5/14/17_____

(Seal)

_____
Notary Public

Loan originator (organization): **Today Lending, LLC**; NMLS #■
Loan originator (organization): **Today Lending, LLC**; NMLS #■
Loan originator (individual): **Chris Davenport**; NMLS #■

Case Number ████████

MIN: ████████

Section 184 Case #: ████████

# RIDER FOR SECTION 184 MORTGAGE
# FEE SIMPLE PROPERTY ONLY

THIS RIDER FOR SECTION 184 MORTGAGE on FEE SIMPLE PROPERTY ONLY (not Trust or Allotted Land) is made this **28th day of January, 2015** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to **Today Lending, LLC** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

9006 E. 39th St.
Tulsa, OK 74145
(Property Address)

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument. Borrower and Lender further covenant and agree as follows:

1. If the Security Instrument is assigned to the Secretary of Housing and Urban Development ('Secretary") any foreclosure proceeding may take place in a tribal court, Federal district court, or other court of competent jurisdiction or non-judicially, if applicable.

2. This security instrument may be assumed, subject to credit approval by the Lender/HUD. Assumption shall not cause any adjustment of the interest rate.

3. Any and all foreclosure proceedings pertaining to the Security Instrument and any judgments arising from such proceedings are subject to the provisions of Section 184 of the Housing and Community Development Act of 1992, as amended, or any successor Act, and any regulations promulgated there under, as well as the applicable provisions of the foreclosure laws of the court of competent jurisdiction, if applicable.

STATEMENT OF OCCUPANCY. Borrower(s) will occupy the subject property as a principal residence within sixty (60) days of the Loan closing. In the case of new construction borrower(s) must occupy within 60 days of completion of construction and/or issuance of the certificate of occupancy. Borrower(s) further understand that occupancy is a requirement for the life of the 184 loan and that the home shall not be vacated or converted to rental while encumbered with a 184 mortgage. Borrower(s) further confirm and understand and agree that failure to occupy the property as a principal residence as provided above, shall constitute a default under the terms and conditions of the loan, and upon the occurrence of such default the whole sum of principal and interest shall immediately become due and payable at the option of the holder of the note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants in this Rider for a Section 184 Mortgage for the Fee Simple Property.

_____ (Seal)        _____ (Seal)
**Hannah D Williams**        -Borrower                                      -Borrower

IDS, Inc.

Form HUD-50121 (2/14/2013)

Loan Number: █████████

# **EXHIBIT A**

### **"EXHIBIT A"**

Lot Twenty-Two (22), Block Twenty-Two (22), of Blocks 18 **THROUGH 23, INCLUSIVE,** Briarwood, an Addition in Tulsa County, State of Oklahoma, **according to the Recorded Plat** No. 2469.

# E-recording Report of Recorded Documents
Itemized Fee View

**Prepared for:** American Abstract & Title Company
**For the period:** 01/29/2015
**Account number:** OKTR44

## Documents Recorded

| NAME | TYPE | PG | ENTRY | RECORD DATE | | AMT | SF | TOTAL | PROCESSED |
|------|------|-----|-------|-------------|---|-----|-----|-------|-----------|
| **Tulsa County, OK** | | | | | | | | | |
| **Jan 29, 2015** | | | | | | | | | |
| ▇▇ | *MORTGAGE* | 9 | E 2015007437 | 01/29/2015 11:13 AM CST | Mortgage Tax | 82.40  Submission Fee | 5.00 | 82.40 | 01/29/2015 |
| | | | | | Recording Fee | 29.00 | 0.00 | 29.00 | 01/29/2015 |
| | | | | | Mortgage Cert Fee | 5.00 | 0.00 | 5.00 | 01/29/2015 |
| | | | | | | *116.40* | *5.00* | *121.40* | |
| **Totals for Tulsa County, OK** | | | | | | 116.40 | 5.00 | 121.40 | |

## Recording Fee Totals

| COUNTY | RECORD DATE | AMT | SF | |
|--------|-------------|-----|-----|---|
| Tulsa County, OK | 01/29/2015 | 116.40 | 5.00 | 121.40 |
| **Totals for Tulsa County, OK** | | **116.40** | **5.00** | **121.40** |
| **Total of All Recording Fees** | | 116.40 | 5.00 | 121.40 |

**Document Count:** 1

**Questions Contact:**
Simplifile Support 1-800-460-5657
4844 North 300 West, Suite 202
Provo, UT 84604



Tulsa County Clerk - Michael Willis
Doc # 2022036716  Page(s): 1
04/08/2022 10:02:12 AM
Receipt # 22-24410
Fee: $ 18.00

PREPARED BY AND WHEN RECORDED MAIL TO:
The Mortgage Law Firm, PLLC
421 NW 13th Street, Suite 300
Oklahoma City, OK 73103

MI█████████
MERS Telephone No. **1-888-679-6377**

TS N█████

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc., as Mortgagee, as nominee for Today Lending, LLC (herein "Assignor"), does hereby grant, assign, transfer, and convey unto Mid America Mortgage, Inc., whose address is 15301 Spectrum Dr., Addison, TX 75001, all of its right, title and interest in the below described mortgage.

Original Lender:        Today Lending, LLC
Made By:        Hannah D. Williams, a single woman
Date of Security Instrument:  January 28, 2015
Original Loan Amount:  $82,323.00
Recording Information:  Tulsa County, OK on January 29, 2015, Doc. No. 2015007437.

Property Address: 9006 E. 39th St., Tulsa, OK 74145
Property Legal Description:

Lot Twenty-two (22), Block Twenty-two (22), of Blocks 18 Through 23, Inclusive, BRIARWOOD, an Addition in Tulsa County, State of Oklahoma, according to the recorded Plat No. 2469.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on _March 23, 2022_.

Mortgage Electronic Registration Systems, Inc., as Mortgagee, as nominee for Today Lending, LLC, its successors and assigns

By: _Jeffrey Bode_
Title: _Vice President_
Oklahoma should be signed by a Vice President

State of ___Texas___    }SS
County of ___Dallas___

On _March 23, 2022_ before me _Lorena Aguirre_, a Notary Public, personally appeared _Jeffrey Bode, Vice President_ who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal

_____
Notary Public

(This area for Official Notary Seal)



LORENA AGUIRRE
Notary Public, State of Texas
Comm. Expires 02-02-2026
Notary ID█████

**EXHIBIT D**

| Creditor: | Mid America Mortgage, Inc |
|---|---|
| Debtor: | Hannah Delaney Williams |
| Case No.: | 22-10445 |
| Loan No.: | XXXXXX3037 |
| Our File No.: | 4216-N-0634 |
| Collateral: | 9006 E. 39th St, Tulsa, Oklahoma 74145 |

**PAYMENTS RECEIVED**

| | |
|---|---|
| Loan Status as of: | 5/31/2022 |
| Initial Due Date: | 10/1/2021 |

| Date Received | Amount Received | Due Date | Amount Due | NSF/Late Charges/Other | Paid Over/Short | Description |
|---|---|---|---|---|---|---|
| | | 10/1/2021 | $ 710.47 | | $ (710.47) | Payment Accrued |
| | | 11/1/2021 | $ 710.47 | | $ (710.47) | Payment Accrued |
| | | 12/1/2021 | $ 710.47 | | $ (710.47) | Payment Accrued |
| | | 1/1/2022 | $ 710.47 | | $ (710.47) | Payment Accrued |
| | | 2/1/2022 | $ 710.47 | | $ (710.47) | Payment Accrued |
| | | 3/1/2022 | $ 660.00 | | $ (660.00) | Payment Accrued |
| | | 4/1/2022 | $ 660.00 | | $ (660.00) | Payment Accrued |
| | | 5/1/2022 | $ 660.00 | | $ (660.00) | Payment Accrued |
| 5/18/2022 | | | | $ 432.75 | $ 432.75 | Suspense at Petition |
| **Total:** | $ - | | $ 5,532.35 | | $ (5,099.60) | |

| Delinquent Payments | | Days Delinquent: | | 211 | | |
|---|---|---|---|---|---|---|
| Month Due | P&I Due | Escrow Due | Other Fees | Total Due | | |
| 10/1/2021 | $ 381.25 | $ 329.22 | $ - | $ 710.47 | | |
| 11/1/2021 | $ 381.25 | $ 329.22 | $ - | $ 710.47 | | |
| 12/1/2021 | $ 381.25 | $ 329.22 | $ - | $ 710.47 | | |
| 1/1/2022 | $ 381.25 | $ 329.22 | $ - | $ 710.47 | | |
| 2/1/2022 | $ 381.25 | $ 329.22 | $ - | $ 710.47 | | |
| 3/1/2022 | $ 381.25 | $ 278.75 | $ - | $ 660.00 | | |
| 4/1/2022 | $ 381.25 | $ 278.75 | $ - | $ 660.00 | | |
| 5/1/2022 | $ 381.25 | $ 278.75 | $ - | $ 660.00 | | |
| Delinquency | | | $ | 5,532.35 | | |
| Less Suspense | | | $ | 432.75 | | |
| Total Delinquency | | | $ | 5,099.60 | | |